THE PEOPLE, *ex rel.* Ralph Noble, *vs.* THE BOARD OF COM-
MISSIONERS OF PILOTS.

The 23d section of the pilot law giving ample remedy to any pilot of the port
of New York who shall have been suspended, by an appeal to the Board of
Commissioners of Pilots, for a rehearing, a *certiorari* will not be granted,
until that remedy has been exhausted.

THIS was an appeal from an order made at a special term,
superseding a common law writ of *certiorari*.  The writ
was issued to the Board of Commissioners of Pilots, com-
manding them to certify their record and proceedings in sus-
pending the relator from acting as a pilot of the port of New
York.  The relator, Ralph Noble, is one of the Sandy Hook
pilots, licensed by the Board of Commissioners of Pilots, pur-
suant to the authority conferred on them by the " Act to pro-
vide for the licensing and government of the pilots, and
regulating pilotage of the port of New York," passed June
28, 1853.  (2 *R. S.* 429, 5*th ed.*)  Noble was suspended by
resolution of the board, passed November 26, 1861, for hav-
ing improperly taken away from Stephen Stokes, a New Jersey
pilot, the U. S. ship " *Constitution*," and collected the pilot-
age, amounting to $112, and refusing to refund the amount,
pursuant to an order of the board made July 16, 1861.  The
Board of Commissioners of Pilots of New York are authorized
to make and enforce rules and regulations for the government
of the pilots licensed by them, to declare and enforce forfeit-
ures of pilotage on mismanagement or neglect of duty by any
pilot, and to suspend any pilot, during their pleasure, for der-
eliction of duty or disobedience of their rules.  (*Pilot Act,*
1853, §§ 12, 13.)  Sections 24 and 25, of the same act, pre-
scribe the mode of proceeding in case of complaints made in
writing against any pilot, and for a notice of five days, speci-
fying the complaint, to be served personally on the pilot, re-
quiring him to appear before the board and answer, &c.
Section 23 provides for an appeal to the board of commis-
sioners for rehearing, in case of suspension of any pilot, and
authorizes the board, on such rehearing, to review and confirm

or reverse their previous decision. By act of congress of March 2, 1837, (5 *U. S. Stat. at Large, p.* 153,) the New Jersey pilots have equal privileges with the New York pilots on the waters forming the boundaries of the two states. There is no distinction as to the powers and duties of *branch* pilots or *deputy* pilots under the pilot law of New Jersey. Regulation No. 10 of the pilot commissioners is as follows : " No pilot shall by any unfair means or by a reduced rate take a vessel from another pilot ; and in case of his so doing, shall forfeit to the pilot displaced the full amount of the pilotage." The return and amended return of the commissioners of pilots to the certiorari showed that complaint in writing was made against Noble by the president of the board of New Jersey commissioners, on behalf of Pilot Stokes, charging Noble with unfairly taking away from Stokes the U. S. ship *Constitution.* The complaint was received by the New York board July 9, 1861. Noble appeared on the 16th July and made a statement of the facts, which was reduced to writing by the secretary of the board, signed by Noble and submitted as his defense. Stokes made his statement, and the board decided that Noble was not justified in taking the ship, and that he was bound to refund the pilotage to Stokes. On the 29th October, 1861, Noble was, by order of the board, notified to appear before them on the 5th November, 1861, which he did, and he then refused to pay over the pilotage. On the 12th November, 1861, Stokes made a written complaint to the board that he had caused demand to be made on Noble for the amount of the pilotage, and that he refused to pay it over to him. Noble was thereupon served with notice to appear before the board on the 19th November, 1861, and show cause why his license should not be revoked ; the notice specified the complaint, and was served personally on the 13th November. Noble appeared and reiterated his refusal, and the board, after waiting a week longer, finally, on the 26th November, 1861, suspended him. He made no appeal for a rehearing, as provided in § 23 of the law. After the first re-

The People *v.* Board of Commissioners of Pilots.

turn to the writ, a motion was made for a further return to bring up the written complaint and notices, and certain matters of fact and testimony. The motion, after a hearing before Justice LEONARD, was granted as to producing the written complaint, notices, &c., and in all other respects denied. There was no appeal from this order. On the hearing before Justice INGRAHAM on the further return, the writ was superseded and judgment ordered for the defendants.

*Flanagan & Cummings,* for the appellant.

*Wm. Allen Butler,* for the respondents.

*By the Court,* BARNARD, J.   Section 23 of the pilot law gives the relator ample remedy by appeal for a rehearing, to the commissioners. We cannot assume that that body will necessarily adhere to their previous decision; but on the contrary must assume that if that body is convinced, on a rehearing, that the former proceedings were irregular, or that the former decision was erroneous either upon the facts or the law, it will promptly reverse its former decision. This remedy of a rehearing being given, the writ of certiorari should not be granted till such remedy has been exhausted.

Order affirmed, with $10 costs.

[NEW YORK GENERAL TERM, May 5, 1862.  *Ingraham, Leonard* and *Barnard,* Justices.]